UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

TERRELL ROCHE,

        Plaintiff,

v.

UNKNOWN MORRISON et al.,

        Defendants.
_____/

Case No. 1:25-cv-312

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss the following claims against Defendants for failure to state a claim: (1) any intended First Amendment claims regarding placement on grievance restriction; (2) any intended Eighth Amendment claims premised upon the loss of visits; (3) Plaintiff's Fourteenth Amendment procedural due process claims regarding the allegedly false misconduct as well as the loss of visits and loss of his prison job; (4) Plaintiff's official capacity claims for damages; and (5) Plaintiff's requests to have Defendants terminated from their employment.

Plaintiff's Fourteenth Amendment substantive due process claims against Defendants remain in the case. As set forth *infra*, Plaintiff may proceed upon his personal capacity claims for

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

damages, as well as any official and personal capacity claims for injunctive relief in the form of expungement of the misconduct conviction and reinstatement of his job.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred there. Plaintiff sues ICF Inspector Unknown Silinas and ICF Correctional Officer Unknown Morrison in their official and personal capacities. (Compl., ECF No. 1, PageID.2.)

Plaintiff alleges that on January 23, 2025, ICF staff conducted a shakedown of his housing unit. (*Id.*, PageID.3.) He avers that Defendant Morrison searched his cell and found Plaintiff's "papers under [his] pillows with [Plaintiff's] affirmations written on them." (*Id.*) Defendant Morrison issued Plaintiff a contraband removal slip, stating that she found three pieces of paper hidden in a book, and that the paper "appear[ed] to have a waxy substance on it." (*Id.*) Defendant Morrison indicated she gave the paper to Defendant Silinas for field testing, which resulted in a positive test for marijuana. (*Id.*) A day later, Defendants issued Plaintiff a misconduct ticket for substance abuse (marijuana). (*Id.*) Plaintiff was ultimately found guilty of the charge and served 15 days' worth of sanctions. (*Id.*)

Plaintiff avers that during this process, Defendants never provided him proof of the field test, never took pictures of the "contraband" and where it was found, and never turned the "contraband" over to the Michigan State Police to be tested. (*Id.*) Plaintiff contends that Defendants falsely charged him and falsified the evidence. (*Id.*) Plaintiff supports that assertion by stating that a few days after the shakedown, he asked Defendant Morrison why she had lied in the

4

misconduct ticket. (*Id.*) Defendant Morrison kept walking and said, "[Be]cause you're known for smuggling so why wouldn't you do it again." (*Id.*)

Plaintiff goes on to state that as a result of the misconduct, he lost his visits, arguing that this amounts to "cruel and unusual punishment." (*Id.*) Plaintiff was placed on grievance restriction and lost his job as a porter. (*Id.*, PageID.3–4.) Plaintiff alleges further that the falsified misconduct has caused him to lose financial support from his family because of the nature of the ticket. (*Id.*)

Based on the foregoing, the Court construes Plaintiff's complaint to assert: (1) a First Amendment claim regarding placement on grievance restriction; (2) an Eighth Amendment claim regarding his loss of visits; and (3) Fourteenth Amendment due process claims regarding the allegedly falsified misconduct, Plaintiff's loss of his job as a porter, and his loss of visits. As relief, Plaintiff requests damages, as well as for the misconduct ticket to be overturned. (*Id.*, PageID.4.) He also asks for the "so-called evidence" to be provided to the Michigan State Police for testing, to be reinstated to his job as a porter, a letter of apology from Defendants, and for Defendants to "be removed from their positions." (*Id.*)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    First Amendment Claim—Placement on Grievance Restriction

As set forth above, the Court has construed Plaintiff's complaint to assert a First Amendment claim regarding his placement on grievance restriction.

As an initial matter, Plaintiff's complaint is devoid of any allegations suggesting that either Defendant was personally responsible for Plaintiff's placement on grievance restriction. In any event, Plaintiff's placement on grievance restriction did not violate his rights under the First Amendment. "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin*

*v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Plaintiff had other means of exercising his right to petition government for redress of grievances. Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Moreover, Plaintiff was not wholly denied access to the grievance process. Placement on modified access does not prohibit an inmate from utilizing the grievance process. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445–47 (6th Cir. 2005); *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001). The inmate may still request a grievance form and, if the form is provided, submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances. *See* MDOC Policy Directive 03.02.130 ¶ SS (eff. Oct. 21, 2024). Moreover, if a prisoner submits a grievance obtained from a source other than the Step-I grievance coordinator, the grievance coordinator may reject the grievance, in accordance with ¶ P of the policy. *Id.* ¶¶ P(3), SS. As with any grievance rejection under ¶ P, the prisoner may appeal the rejection to the next step of the grievance process. *Id.* ¶ O. There is nothing constitutionally improper about this review process for a prisoner who has demonstrated an inability to properly utilize the grievance process in the past. Plaintiff's First Amendment claim regarding placement on grievance restriction will, therefore, be dismissed.

### B.    Eighth Amendment Claim—Loss of Visits

The Court has also construed Plaintiff's complaint to assert an Eighth Amendment claim premised upon his loss of visits as a result of the misconduct charge.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The

7

Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a

8

substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

The United States Supreme Court has previously found that a two-year ban on visitation following an inmate's misconduct conviction for substance abuse did not violate the Eighth Amendment. *See Overton v. Bazzetta*, 539 U.S. 126, 136–37 (2003) (noting that the "restriction undoubtedly makes the prisoner's confinement more difficult to bear" but "d[id] not, in the circumstances of th[at] case, fall below the standards mandated by the Eighth Amendment."). Likewise, various courts have concluded that a temporary revocation of visitation privileges does not violate the Eighth Amendment. *See, e.g.*, *Cordero v. Warren*, 612 F. App'x 650, 654 (3d Cir. 2015) (six-month failure to reinstate visitation with inmate's brother, followed by non-contact visits only, did not violate the Eighth Amendment); *Presbury v. Wenerowicz*, 472 F. App'x 100, 101 (3d Cir. 2012) (temporary suspension of inmate's wife's visitation did not violate the Eighth Amendment); *Barasky v. Shoemaker*, No. 1:20-CV-2457, 2021 WL 2255002, at *5 (M.D. Pa. June 3, 2021) (temporary visitation ban of unknown length did not violate Eighth Amendment); *Azzara v. Scism*, No. 4:CV-11-1075, 2012 WL 722342, at *7 (M.D. Pa. Mar. 1, 2012) (two-year temporary loss of visitation and telephone privileges did not violate the Eighth Amendment); *Cavin v. Heyns*, No. 1:11-cv-1370, 2012 WL 366729, at *5 (W.D. Mich. Feb. 2, 2012) (concluding that a two-year ban on visitation did not violate the Eighth Amendment).

Here, Plaintiff alleges no facts from which the Court could infer that his loss of visits amounts to a permanent ban rather than a temporary revocation. Plaintiff mentions only a "loss of visits" without setting forth facts describing the length of the ban. The Court, therefore, will dismiss any intended Eighth Amendment claim premised upon the loss of visits.

9

### C.     Fourteenth Amendment Due Process Claims

#### 1.     Procedural Due Process—False Misconduct, Loss of Job, Loss of Visits

The Court has construed Plaintiff's complaint to assert Fourteenth Amendment procedural due process claims based upon his allegedly false misconduct conviction for substance abuse.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). For example, in *Sandin*, the Court held that regardless of the mandatory language of the prison

regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).

First, Plaintiff has not—and cannot—allege that the misconduct conviction resulted in a deprivation that inevitably affected the duration of his sentence. Plaintiff is incarcerated for crimes committed in October of 2005 and September of 2006. *See* MDOC Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=612820 (last visited Apr. 10, 2025). The MDOC reward for serving time "misconduct free" has changed significantly over the last 25 years. For years, inmates could earn "good time credits." *Taylor v. Lantagne*, 418 F. Appx 408, 412 (6th Cir. 2011); Mich. Comp. Laws § 800.33. For prisoners who committed crimes on or after April 1, 1987, however, "good time credits" were discontinued and replaced by "disciplinary credits." *Taylor*, 418 F. App'x at 412; Mich. Comp. Laws § 800.33. Then, for prisoners convicted of crimes committed on or after December 15, 1998, for a particular list of crimes, and on or after December 15, 2000, for all other crimes, "disciplinary credits" were replaced by "disciplinary time." *Taylor*, 418 F. App'x at 412; Mich. Comp. Laws § 800.34.

Plaintiff can receive disciplinary time with regard to his indeterminate sentences for second-degree arson and armed robbery, but not with regard to his life without parole sentence for first-degree murder. *See* Mich. Comp. Laws § 800.34. Disciplinary time accrues when a prisoner is found guilty of a major misconduct. A prisoner's accumulated disciplinary time is submitted to the parole board for consideration at parole reviews or interviews. The Sixth Circuit has concluded that "disciplinary time" never impacts the duration of a sentence in the sense contemplated by *Sandin*. *See Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009).

As to the second category, Plaintiff has not alleged that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 484. In his complaint, Plaintiff mentions only that he received "15 days of sanction[s]" and lost his job and visitation privileges. (Compl., ECF No. 1, PageID.3.) Per MDOC policy, substance abuse is a class I misconduct. *See* MDOC Policy Directive 03.03.105, Attach. A. The maximum sanctions for a class I misconduct are as follows: 10 days of punitive segregation for each violation, but not to exceed 20 days for violations arising out of a single incident; 30 days of toplock (but not to be combined with punitive segregation); 30 days of loss-of-privileges sanctions, or 60 days maximum for multiple violations arising out of a single incident; and restitution. *See id.* Attach. D.

The most significant hardship that can result from a class I misconduct conviction is placement in segregation. The Supreme Court has held that placement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559

12

(6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

Here, the lesser sanctions received by Plaintiff are certainly no worse than segregation. Thus, if confinement in segregation does not implicate a protected liberty interest, it follows that any loss of privileges, including loss of visits and loss of his job as a porter, that Plaintiff incurred as a result of his misconduct convictions did not implicate such an interest. *Cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (holding that there is no constitutional right to prison employment).

Accordingly, for all of the foregoing reasons, Plaintiff fails to state Fourteenth Amendment procedural due process claims against Defendants.

### 2. Substantive Due Process Claims

Plaintiff's complaint can also be construed to assert Fourteenth Amendment due process claims against Defendants premised upon the issuance of a false misconduct.

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from

13

being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999).

Here, Plaintiff explicitly alleges that Defendants lied about where the alleged contraband was located, lied about the results of the field test, and failed to have the alleged contraband tested further in order to frame Plaintiff. Given Plaintiff's allegations, his Fourteenth Amendment substantive due process claims against Defendants may not be dismissed on initial review.

### D.    Official Capacity Claims

As set forth above, the Court has concluded that Plaintiff may proceed on his Fourteenth Amendment substantive due process claims against Defendants. Plaintiff, however, has sued Defendants in both their official and personal capacities. (Compl., ECF No. 1, PageID.2.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has

not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages as well as various forms of injunctive relief. (Compl., ECF No. 1, PageID.4.) Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and any claims for monetary damages against Defendants in their official capacities fails to state a claim upon which relief can be granted.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

15

Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

One form of injunctive relief that Plaintiff requests is to have Defendants "removed from their positions." (Compl., ECF No. 1, PageID.4.) Courts, however, have found that they do not have the authority to order that correctional officials be terminated from their employment. *See, e.g.*, *Williams v. Maynard*, No. 23-CV-1320, 2023 WL 3674332, at *1 n.3 (E.D. Pa. May 25, 2023) (collecting cases); *Pagonis v. Raines*, No. 4:17-CV-01-DC-DF, 2018 WL 9240919, at *4 (W.D. Tex. Aug. 10, 2018) ("'Federal courts are not prison managers' and injunctive relief in the form of an order to terminate a prison official's employment is not available in a § 1983 action." (citations omitted)), *report and recommendation adopted*, No. PE:17-CV-00001-DC, 2018 WL 9240916 (W.D. Tex. Sept. 10, 2018). Accordingly, the Court will dismiss Plaintiff's claims seeking termination of Defendants' employment. Plaintiff's other requests for injunctive relief (reinstatement of his job and expungement of the misconduct conviction) will remain in the case.

## Conclusion

The court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Moreover, having conducted the review required by the PLRA, the Court determines that the following claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c): (1) any intended First Amendment claims regarding placement on grievance restriction; (2) any intended Eighth Amendment claims premised upon the loss of visits; (3) Plaintiff's Fourteenth Amendment procedural due process claims regarding the allegedly false misconduct as well as the loss of visits and loss of his prison job; (4) Plaintiff's official capacity

claims for damages; and (5) Plaintiff's requests to have Defendants terminated from their employment.

Plaintiff's Fourteenth Amendment substantive due process claims against Defendants remain in the case. As set forth above, Plaintiff may proceed upon his personal capacity claims for damages, as well as any official and personal capacity claims for injunctive relief in the form of expungement of the misconduct conviction and reinstatement of his job.

An order consistent with this opinion will be entered.


Dated:   May 12, 2025                              /s/ *Maarten Vermaat*
                                                                    Maarten Vermaat
                                                                    United States Magistrate Judge