UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

TERRELL ROCHE #612820,

   Plaintiff,

  v.

UNKNOWN MORRISON, et al.,

   Defendants.

_____/

Case No. 1:25-cv-312

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R. & R.) addresses Defendants' motion to dismiss, ECF No. 23, Plaintiff's response in opposition, ECF No. 25, and Defendant's reply, ECF No. 26. This R. & R. also addresses Plaintiff's motion for leave to file a sur-reply. ECF No. 29.

Plaintiff – state prisoner Terrell Roche – filed an unverified civil complaint under 42 U.S.C. § 1983 alleging that Defendants – Corrections Officer (CO) Morrison and Inspector Silinas – violated his constitutional rights while he was incarcerated at Ionia Correctional Facility (ICF). ECF No. 1. More specifically, Plaintiff alleges that Defendants conducted a shakedown of his housing unit and confiscated three slips of paper that tested positive for marijuana. *Id.*, PageID.3. Plaintiff asserts that Defendants falsified the evidence, resulting in Plaintiff serving 15 days of sanctions and losing his porter position. *Id.* This Court construed Plaintiff's

1

complaint to assert claims under the First, Eight, and Fourteenth Amendments. ECF No. 4.   Following screening, only Plaintiff's Fourteenth Amendment substantive due process claims against both Defendants remain in the case.  *Id.*, PageID.31.

In the present motion, Defendants assert that Roche's complaint fails to state a claim because Roche must exhaust all administrative remedies before filing a lawsuit.   In most cases, a plaintiff's failure to exhaust his administrative remedies is addressed in a motion for summary judgment.   Here, however, Defendants assert that Plaintiff could not possibly have exhausted his remedies because his lawsuit was filed too soon after the incidents in his complaint.   The undersigned agrees.   In the opinion of the undersigned, Roche's complaint fails to state a claim for which relief may be granted because there was not enough time between the alleged conduct and the filing of this lawsuit for Roche to exhaust his administrative remedies. Accordingly, the undersigned respectfully recommends that the Court **grant** Defendants' motion to dismiss.

## II.   Factual Allegations

The Court previously issued a screening opinion in this case.   ECF No. 4. There, the Court provided the following summary of the relevant factual allegations:

> Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred there. Plaintiff sues ICF Inspector Unknown Silinas and ICF Correctional Officer Unknown Morrison in their official and personal capacities. (Compl., ECF No. 1, PageID.2.)

Plaintiff alleges that on January 23, 2025, ICF staff conducted a shakedown of his housing unit. (*Id.*, PageID.3.) He avers that Defendant Morrison searched his cell and found Plaintiff's "papers under [his] pillows with [Plaintiff's] affirmations written on them." (*Id.*) Defendant Morrison issued Plaintiff a contraband removal slip, stating that she found three pieces of paper hidden in a book, and that the paper "appear[ed] to have a waxy substance on it." (*Id.*) Defendant Morrison indicated she gave the paper to Defendant Silinas for field testing, which resulted in a positive test for marijuana. (*Id.*) A day later, Defendants issued Plaintiff a misconduct ticket for substance abuse (marijuana). (*Id.*) Plaintiff was ultimately found guilty of the charge and served 15 days' worth of sanctions. (*Id.*)

Plaintiff avers that during this process, Defendants never provided him proof of the field test, never took pictures of the "contraband" and where it was found, and never turned the "contraband" over to the Michigan State Police to be tested. (*Id.*) Plaintiff contends that Defendants falsely charged him and falsified the evidence. (*Id.*) Plaintiff supports that assertion by stating that a few days after the shakedown, he asked Defendant Morrison why she had lied in the misconduct ticket. (*Id.*) Defendant Morrison kept walking and said, "[Be]cause you're known for smuggling so why wouldn't you do it again." (*Id.*)

Plaintiff goes on to state that as a result of the misconduct, he lost his visits, arguing that this amounts to "cruel and unusual punishment." (*Id.*) Plaintiff was placed on grievance restriction and lost his job as a porter. (*Id.*, PageID.3–4.) Plaintiff alleges further that the falsified misconduct has caused him to lose financial support from his family because of the nature of the ticket. (*Id.*)

Based on the foregoing, the Court construes Plaintiff's complaint to assert: (1) a First Amendment claim regarding placement on grievance restriction; (2) an Eighth Amendment claim regarding his loss of visits; and (3) Fourteenth Amendment due process claims regarding the allegedly falsified misconduct, Plaintiff's loss of his job as a porter, and his loss of visits. As relief, Plaintiff requests damages, as well as for the misconduct ticket to be overturned. (*Id.*, PageID.4.) He also asks for the "so-called evidence" to be provided to the Michigan State Police for testing, to be reinstated to his job as a porter, a letter of apology from Defendants, and for Defendants to "be removed from their positions." (*Id.*)

ECF No. 4, PageID. 18-19.

3

Roche's complaint was signed on March 6, 2025, post-marked March 17, and received in the Clerk's Office on March 20.    ECF No. 1.

### III.  Sur-reply

As an initial matter, Plaintiff filed a motion for leave to file a sur-reply.    ECF No. 29.    In response, Defendants argue that there is no basis for Plaintiff to file a sur-reply because it is merely an attempt to present arguments Plaintiff failed to include in his response.    ECF No. 30, PageID. 151.

This Court's Local Civil Rules allow for a response to a dispositive motion and then a reply to the response.    W.D. Mich. LCivR 7.2(c).    "The court may permit or require further briefing."    *Id.*    This Court has noted that "[i]t is well-established that parties do not have a right to file a sur-reply brief, whether under the Federal Rules of Civil Procedure or the Local Civil Rules of our district, and both this court and other federal courts rarely grant leave to file a surreply."    *Aslani v. Sparrow Health Sys.*, No. 1:08-CV-298, 2009 WL 3711602, at *22 (W.D. Mich. Nov. 3, 2009) (footnote omitted).    The Court may grant leave to file a sur-reply to afford a party an opportunity to address new issues raised for the first time in the reply.    *Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio 2010).

Here, Plaintiff's proposed sur-reply argues that this Court's screening opinion already considered whether Plaintiff stated a Fourteenth Amendment claim for which relief may be granted.    Considering Plaintiff's *pro se* status and the relevance of the arguments presented, the undersigned accepts Plaintiff's sur-reply.    Accordingly, Plaintiff's motion for leave to file a sur-reply is **granted**.

4

### IV. Motion to Dismiss Standard

The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Put differently, if plaintiffs do "not nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Those factual allegations "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (internal citations omitted). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so

long as they are referred to in the Complaint and are central to the claims contained therein."   *Id.*

Plaintiff is proceeding *pro se*.   As such, his pleadings are subject to less stringent standards than those prepared by attorneys.   *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972).

**V. Analysis**

Defendants argue that Roche's remaining claims should be dismissed because, considering the timeline of Roche's complaint, he could not have pursued any claims through all three steps of the grievance process before filing the lawsuit.   ECF No. 38, PageID. 213.

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.   *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).   A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.   *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.   *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).    "Compliance with prison grievance procedures, therefore, is all that is

required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.   In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.   In the Court's view, this objective was achieved in three ways.   First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id.* at 525.   Second, "the internal review might 'filter out some frivolous claims.'"  *Id.* (quoting *Booth*, 532 U.S. at 737*).*  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration.  *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

As noted in the Introduction, the undersigned usually considers the issue of exhaustion at the summary judgment stage.   However, Courts in this District have previously stated that it is appropriate for defendants in a prisoner civil rights action

to raise the affirmative defense of failure to exhaust administrative remedies in a motion to dismiss. *Jones v. Tudor*, No. 1:08-cv-300, 2009 WL 2595575 at \*6 (W.D. Mich. Aug. 20, 2009) (citing *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008)). To decide a motion to dismiss, the Court may take judicial notice of a plaintiff's MDOC grievance filings. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion, but may only take judicial notice of facts which are not subject to reasonable dispute); *Walker v. Abdellatif,* No. 1:07–cv–1267, 2009 WL 579394 (W.D.Mich. March 5, 2009) (taking judicial notice of MDOC prisoner grievance proceedings in deciding motion to dismiss for lack of exhaustion).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective September 25, 2023) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within **two business days** of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ W. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ W, CC. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ CC. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what,

when, where, why, how).    Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ Y (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within **ten business days** of the response, or if no response was received, within ten days after the response was due.    MDOC Policy Directive 03.02.130 at ¶¶ JJ.    The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.    *Id.* at ¶ LL.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ NN.    The Step III form shall be sent within **ten business days** after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.    *Id.*    The Grievance Section is the respondent for Step III grievances on behalf of the MDOC director.    *Id.* at ¶ OO.

Additionally, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[1], the inmate must first

---

[1]    Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.    While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are

raise the issue during the Misconduct Hearing.  *Siggers v. Campbell*, 652 F.3d 681, 693–94.   If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693–94.

Here, Defendants argue that if Roche had grieved the incident on the earliest date possible, his step Step II appeal would not be due until March 11, 2025.   ECF No. 24, PageID.119.   Additionally, Defendants attach to their brief a Class I Misconduct rehearing report that states a rehearing took place on May 16, 2025. ECF No. 24-1, PageID.123.   Roche's complaint was signed on March 6, 2025, *see* ECF No. 1, PageID.4 (signature page), postmarked on March 17, *id.*, PageID.5, and received at the Clerk's office and filed on March 20, 2025 – two months prior to the rehearing.

In response to Defendants' motion, Roche concedes that he "filed his lawsuit 8 days before the Step III response."   ECF No. 25, PageID.130.   However, Roche requests the Court to deny Defendants' motion to dismiss because he can refile this action after exhaustion.   *Id.*   It should also be noted that Roche argues in his sur-reply that this Court did not dismiss his Fourteenth Amendment substantive due process claims at the screening stage.   While this assertion is correct, the motion to

---

"subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts."   MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

dismiss now before the Court is an assertion of the affirmative defense of exhaustion. The Court's screening opinion did not consider exhaustion.   Furthermore, Plaintiff must exhaust his administrative remedies <u>before</u> filing his lawsuit. 42 U.S.C. 1997e(a).   When a plaintiff fails to completely exhaust his administrative remedies prior to filing his lawsuit, the lawsuit is dismissed without prejudice, *but the case is still dismissed.*

In the opinion of the undersigned, Plaintiff's complaint fails to state a claim for which relief may be granted because he failed to exhaust his administrative remedies before filing the present lawsuit.

## VI.   Recommendation

In the opinion of the undersigned, Plaintiff's complaint fails to state a claim for which relief may be granted because the record before the Court reveals that Roche filed his complaint before grieving the issue through Step III.   Furthermore, Roche concedes that he did not grieve through Step III before filing the present lawsuit. Accordingly, the undersigned respectfully recommends that the Court **grant** Defendants' motion to dismiss based on Plaintiff's failure to exhaust his administrative remedies.   If the Court accepts this recommendation, no claims will remain in the case.

Dated:    April 21, 2026

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE

11

**NOTICE TO PARTIES**

Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).